IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYANN ANDERSON, | ) |
| Plaintiff, | ) Case No. 1:07-cv-111-SJM |
| v. | ) |
| BOARD OF SCHOOL DIRECTORS OF THE MILLCREEK TOWNSHIP SCHOOL DISTRICT, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District J.,

Presently pending before the Court in this federal civil rights action is a motion by the Plaintiff for the undersigned's recusal. This Court has jurisdiction over the pending matter by virtue of 28 U.S.C. §§ 1331, 1343, and 1367. For the reasons set forth below, the motion will be denied.

**I.   BACKGROUND**

Plaintiff MaryAnn Anderson is a former employee of the Millcreek Township School District (the "School District"). In this action arising under 42 U.S.C. § 1983, Anderson has sued the School District's Board of Directors, its former Superintendent, and the former Vice-President of the Board, claiming that these Defendants violated her rights under state and federal law by retaliating against her after she made statements that, she asserts, were in the nature of whistleblower reports. Also named as one of the original Defendants was the School District itself; however, the School District was dismissed from the case following argument held on July 29, 2008. At all relevant

times prior to and during this litigation, the School District has been represented in various capacities by the law firm of Knox McLaughlin Gornall & Sennett, P.C. (hereinafter, the "Knox Firm").

Following extensive pretrial discovery and motions practice, Plaintiff has of late come to the view that Richard Perhacs, Esq., an attorney with Knox Firm, is a "premier witness in Plaintiff's case in chief for whistleblower status and retaliation." (Pl.'s Mot. for Recusal [220] at ¶ 5.) More specifically, Plaintiff contends that Perhacs was complicit in actively concealing and/or spoliating evidence that would have materially assisted her in presenting her case.

Accordingly, Plaintiff has stated her intent to file a motion to add Attorney Perhacs as an additional defendant and to request sanctions against defense counsel and the School District's counsel "for concealing evidence that would have enabled Plaintiff to adduce Attorney Perhacs' culpability in this case…" (Mot. for Recusal at ¶14.) As part of this motion, Plaintiff apparently plans to seek sanctions against the entire Knox firm. Plaintiff asserts that, in addition to my having to rule on the addition of Perhacs as a party and Perhacs's potential liability, the Court will "in the very near future" be "required to address issues directly effecting Knox's representation of [the School District] and compliance with rules of procedure and preservation of electronically stored information." (Pl.'s Br. in Supp. of Mot. for Recusal [221].)

In light of these developments concerning Mr. Perhacs, Plaintiff asserts that my recusal from this case is required under 28 U.S.C. § 455(a) on the theory that my impartiality might reasonably be questioned. In support of this assertion, Plaintiff states the following:

2

> 6. Plaintiff … comprehends, for the first time, that the court's Chief Law Clerk, Kathy Scibetta (K. Scibetta), has a brother, Jeffry [sic] Scibetta (J. Scibetta), who is a shareholder at the Knox Firm in circumstances when an influential shareholder there, Perhacs, is a key witness in Plaintiff's case and possibly a newly added Defendant.
>
> 7. Perhacs is Secretary to the Board of Directors and Personnel Chairperson, having influence over Jeffrey Scibetta.
>
> 8. K. Scibetta is the Court's chief law clerk, having worked for the Court for many years, maintaining a social friendship with the Court and the full confidence of the Court to advise it concerning the disposition of pending cases.
>
> 9. K. Scibetta has been actively involved in advising the Court relevant to the merits of Plaintiff's case, having attending the hearings conducted in January 2011 pursuant to Plaintiff's F.R.C.P. 11 Motion.
>
> 10. Upon information and belief, K. Scibetta has been involved in advising the Court concerning Plaintiff's case for an extended period of time, sans the Court ever disclosing to Plaintiff that her brother is a shareholder at the Knox Firm.
>
> 11. At no time was Plaintiff made aware of K. Scibetta's immediate family relationship with the Knox Firm at the same time she was directly involved in advising the Court about the merits of Plaintiff's case.
>
> 12. [….] the Court is duty bound to recuse itself form this case so Plaintiff can move forward with her case in a forum of impartiality, as is her right.

(Mot. for Recusal at ¶¶ 6-12.)

Additionally, Plaintiff contends that my prior status as a shareholder in the Knox firm some seventeen years ago provides further grounds for recusal. According to Plaintiff, "this Court's prior relationship with Knox and Perhacs may lead the average person on the street to question the ability of the Court to impose sanctions against the judge's former firm where many colleagues likely still work or consider issues raised against a specifically named former colleague from the firm." (Pl.'s Br. in Supp. of Mot. for Recusal [221] at p. 22.)

3

Finally, Plaintiff cites other relevant "acknowledged circumstances" which she believes weigh in favor of my recusal. (Pl.'s Br. in Supp. of Mot. for Recusal at p. 22.) In particular, she points to the following events which, she contends, could support the conclusion that I am biased against her:

- I accepted into the record a document filed by the Defendants on October 5, 2009 – namely, the Defendants' "Joint Supplement" [109] in support of their previous motion for dismissal/ motion for sanctions [87]; Plaintiff considers this document an "unrecognized pleading" and objects to the fact that Defendants were permitted to file the document after pleadings on the original motion had closed;

- On October 6, 2009 I sanctioned Plaintiff's counsel, allegedly "without basis," in connection with a discovery dispute by reopening discovery on a narrowly defined issue and charging Plaintiff's counsel with the cost of the additional discovery;

- On March 16, 2010 I issued a ruling relative to the parties' competing motions for sanctions in which, according to Plaintiff, my treatment of her was "significantly different" (meaning less favorable) than my treatment of the Defendants;

- During a January 6, 2011 argument on Plaintiff's pending motion for Rule 11 sanctions, I permitted the Defendants to address issues raised in their October 5, 2009 Joint Supplement; however, by contrast on May 27, 2011, *after granting Plaintiff's motion to reopen discovery* relative to her own claims of spoliation, I indicated that discovery would be firmly limited to 60 days – conduct which Plaintiff considers "disparate treatment";

- Rulings have not yet issued relative to Plaintiff's motion for reconsideration of this Court's March 16, 2010 Order [157] or Plaintiff's motion for Rule 11 sanctions [183];

- This Court's Order of March 31, 2011 granting Plaintiff's motion to further reopen discovery relative to the alleged spoliation of Defendant Maynard's hard drive [182] did not come until 204 days after the matter had been fully briefed. Plaintiff claims that this delay prejudiced her ability to conduct meaningful discovery due to witnesses' continually fading memories, and she finds it noteworthy

>that this particular discovery request related to possible misconduct on the part of the Knox Firm.

Plaintiff asserts that, when all of the foregoing factors are considered, a reasonable person could question this Court's impartiality and might reasonably wonder whether Plaintiff "will have a fair chance of obtaining swift, impartial resolution" of her (as yet unfiled) motions to add Perhacs as a Defendant, to conduct further discovery regarding Perhacs's conduct, and for sanctions against defense counsel, the School District, and the School District's attorneys. (Pl.'s Br. in Supp. of Mot. for Recusal at p. 28.)

## II.    DISCUSSION

Pursuant to §455(a), a presiding federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a). The test for recusal is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004).

A motion to disqualify a federal district judge is committed to the sound discretion of the district judge. *In re Kensington Int'l Ltd.,* 353 F.3d 211, 224 (3d Cir. 2003). In making the determination whether to recuse, the court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *Sensley v. Albritton,* 385 F.3d 591, 599 (5th Cir. 2004) (quoting *U.S. v. Jordan*, 49 F.3d 152, 156 (5th Cir.1995)). *Accord In re Sherwin-Williams Co.,* 607 F.3d 474, 478 (7th Cir. 2010); *United States v. Holland,* 519

F.3d 909, 913 (9th Cir. 2008); *United States v. DeTemple,* 162 F.3d 279, 287 (4th Cir. 1998).

Applying this standard, this Court finds that no basis has been stated by the Plaintiff which warrants my recusal under § 455.

A.

Insofar as my law clerk's relationship to the Knox Firm and her involvement in this case is concerned, numerous clarifications must be made, as Plaintiff's motion rests upon a number of inaccurate factual assumptions. First, although Ms. Scibetta has served for many years as a law clerk to this Court, she is neither the Court's "chief law clerk" (a title which does not exist) nor its most senior law clerk, nor does she maintain a "social friendship" with the undersigned outside of work.

Second, while it is true that Ms. Scibetta attended the hearings relative to Plaintiff's motion for Rule 11 sanctions, it is not true that she has worked on this case "throughout the litigation," as Plaintiff assumes. In fact, Ms. Scibetta did not become involved in this case until approximately March of 2010, long after the School District had been dismissed as a party to the litigation. Apart from her input concerning the instant recusal motion, she has had no real involvement in any of the Court's substantive rulings to date. To the extent she has assisted the Court relative to Plaintiff's pending Rule 11 motion, it should be noted that that particular motion involves a pointed dispute between Plaintiff's counsel and Defense counsel; it is not directed at the conduct of the School District or its attorneys. Ms. Scibetta also attended a May 27, 2011 argument pertaining to the School District's motion to quash to subpoenas [203] and the Plaintiff's motion for an extension of time to complete discovery [208], but her

involvement was essentially limited to attending the argument and docketing the Court's minutes and the order issued verbally by me in open court.

Third, to the extent Plaintiff is complaining that I failed to disclose to her my law clerk's familial relationship to a shareholder in the Knox Firm, there was neither a need nor any reasonable opportunity for me to do so prior to the time that Plaintiff filed her recusal motion.  As I have noted, Ms. Scibetta had no involvement in this case prior to March of 2010, at which point the School District was no longer a named Defendant. Thereafter, the Knox Firm's only involvement has been in the context of coordinating third party discovery.  At no time has Ms. Scibetta's brother (a trusts and estates lawyer) ever been involved in any aspect of this litigation.  Moreover, the specter of a possible motion for sanctions against the School District and/or its counsel was not formally raised by Plaintiff until July 29, 2011 at the earliest, when Plaintiff filed her "Motion for Permission to Brief Entitlement to Sanctions for Spoliation of Evidence" [214].[1]  Just one month later, Plaintiff filed the instant motion in which she now complains that this Court didn't disclose to her Ms. Scibetta's relationship to a Knox Firm shareholder.  In that brief interim, Ms. Scibetta had had no involvement with the Plaintiff's July 29, 2011 motion, and the Court's only action relative to that motion was an order directing a response from the Defendants.

Thus, to put it quite simply, the Court did not inform Plaintiff of Ms. Scibetta's status during the one month period between July 29 and August 30, 2011 because

---

[1] In fact, Plaintiff represents in her motion for recusal that "[a]ny interest which Perhacs or Knox would have in the outcome of the instant case" are "just now apparent to Plaintiff…" (Pl.'s Br. in Supp. of Mot. for Recusal [122] at p. 22.)  Plaintiff may rest assured that, if the purported interests of Perhacs and Knox in the outcome of this litigation were not previously known to her, they certainly were not known to the Court.

7

there was no need to do so; the Plaintiff's putative sanctions claims against the School District and its counsel were as yet inchoate and no substantive action was being undertaken by the Court at that point.  In addition, the subject of my law clerk's familial relation to a Knox Firm shareholder and its theoretical bearing on some future motion in this case were not the issues foremost on the Court's agenda during the month of August 2011, as this Court was engaged with other pressing matters unrelated to this litigation.

Even so, Plaintiff claims that a reasonable person going forward would wonder whether any improper influence had been exerted upon my law clerk and/or whether the law clerk could be impartial in performing her professional duties for this Court.  The implication is that, by extension, my own impartiality might reasonably be questioned insofar as I might be called upon to decide Plaintiff's future motions for sanctions against Perhacs and/or the Knox Firm.

The short response to this is that Plaintiff fails to distinguish the role of law clerks from that of the judge. "Both bench and bar recognize … that judges, not law clerks, make the decisions," *In re Allied-Signal Inc.,* 891 F.2d 967, 971 (1st Cir. 1989), and "[t]he statute itself [i.e, § 455] speaks of 'justice[s], judge[s], or magistrate[s],' not clerks." *Id.* Moreover, most reasonable people would understand that judges are able to ferret out and set aside the potential biases of their law clerks.  *See id.* ("[J]udges are fully capable (and believed by reasonable members of the public to be fully capable) of taking account of whatever 'bias' having a brother in a plaintiff's law firm might bring to a clerk.").  Thus, even where a colorable conflict exists on the part of a law clerk, the

proper remedy is sequestration of the law clerk from future involvement in the litigation,[2] not recusal of the judge. *See In re Nazi Era Cases Against German Defendants Litig.*, 153 Fed. Appx. 819, 826 (3d Cir. 2005) ("[I]solation of [conflicted] law clerks usually ameliorates the appearance of impropriety"). *Accord In re Allied-Signal Inc.*, *supra*, at 972 ("If a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified.") (quoting *Hunt v. American Bank & Trust Co. of Baton Rouge, Louisiana,* 783 F.2d 1011, 1016 (11th Cir. 1986)).

Plaintiff has submitted no authority, and this Court is not independently aware of any, which would require the undersigned's recusal in the present circumstances. I therefore find that none of the factors cited by Plaintiff as supposedly establishing a conflict on the part of my law clerk provides grounds for my own recusal.

B.

Plaintiff also contends that my own prior relationship with the Knox Firm "may lead the average person on the street to question the ability of the Court to impose sanctions against the judge's former firm where many colleagues likely still work or consider issues raised against a specifically named former colleague from the firm." (Pl.'s Br. in Supp. of Mot. for Recusal [221] at p. 22.)  However, no reasonable person, "with knowledge of all the facts," *In re Kensington Intern. Ltd.*, 368 F.3d at 301, would harbor such concerns.

To clarify the record, this Court's relationship with the Knox Firm as one of its former shareholders ended some seventeen years ago when I assumed the bench.

---

[2] If and when it becomes necessary to do so based upon Plaintiff's prospective filings, this Court will make a determination at some future point whether such sequestration is appropriate.

Since 1994 when I terminated my employment with the Knox Firm, significant turnover has occurred with respect to the Firm's attorneys, such that many of my former colleagues are no longer employed there. With respect to those former colleagues who remain, my contacts with those individuals have been either infrequent and incidental or (for those who practice in federal court) limited to a strictly professional setting. In sum, over the last seventeen years, I have not maintained a close personal or social relationship with any of the attorneys presently employed at the Knox Firm, including Mr. Perhacs.[3] Considering these facts, my prior association with the Knox Firm years ago would not lead a reasonable person to question my ability to preside impartially over a request for sanctions against Mr. Perhacs or the Knox Firm, if and when such a request is made in this case.

C.

Plaintiff's remaining grounds for my disqualification involve about a half-dozen incidents in which she perceives that, in presiding over the instant litigation, I treated her, or her attorney, less favorably than I treated the Defendants and/or their counsel. The short answer to this line of argument is that these matters, which are intrinsic to the judicial proceedings at hand, do not constitute valid grounds for my recusal under §455(a).

It is by now well established that "beliefs or opinions which merit recusal must involve an extrajudicial factor." *Selkridge v. United of Omaha Life Ins. Co*., 360 F.3d 155, 167 (3d Cir. 2004) (internal quotation marks and citation omitted). In this case, the

---

[3] To the best of the Court's recollection, the only contact I have had with Mr. Perhacs in the seventeen years since I left the Knox Firm was in May of 2005 when he testified in a jury trial in *Figaski v. Storten*, Case No. 1:03-cv-352-SJM.

record could not support a finding of an extrajudicial factor causing impartiality. Notwithstanding the Plaintiff's consternation about my law clerk's relationship to another lawyer at the Knox Firm (who has never been involved in this case), this Court has never received any extrajudicial information pertaining to this case as a result of that relationship. Moreover, reasonable persons would not assume that this Court had obtained – much less utilized -- extrajudicial knowledge about the case simply by virtue of my law clerk's familial relation to a Knox firm lawyer. *See In re Allied-Signal Inc.*, 891 F.2d at 971 ("Assuming the family relationship [between law clerks and lawyers representing plaintiffs in mass tort litigation] raises a slight cloud, few knowledgeable people would expect that it would ordinarily cause most law clerks to actually commit the serious ethical breach of seeking to influence a judge improperly.").

Absent the existence of an extrajudicial factor, the record must evince a "deep-seated favoritism or antagonism [on the part of the judge] that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Here, the record cannot support such a finding. To the extent Plaintiff has cited examples of supposedly "disparate treatment," several observations must be made in order to set the record straight.

First, the fact that I accepted into the record the Defendants' "Joint Supplement" (in which Defendants' raised additional allegations of alleged discovery-related misconduct on the part of Plaintiff and/or her counsel) and discussed its allegations during an October 6, 2009 argument (the day after it was filed) cannot rationally support an inference of bias. The record here will reflect that this Court has consistently been generous toward both sides in allowing them to file whatever documents they have

deemed necessary in order to fulfill their respective obligations of zealous representation in this case. This has included extensive motions practice on the part of both Plaintiff and Defendants concerning collateral matters having to do more with alleged discovery violations than the merits of the Plaintiff's whistleblower claims. Although Plaintiff may have felt unprepared to fully discuss the Defendants' allegations as of October 6, 2009, no ruling was made on the matter that day, and Plaintiff has since been given ample opportunity to respond to the allegations in the Joint Supplement. Plaintiff has also been given leave to litigate, at length, her entitlement to Rule 11 sanctions stemming from the allegations contained in the Joint Supplement.

Second, the fact that, during the October 6, 2009 argument, "in discussing the allegations of the Joint Supplement [Docket No. 109] the Court adopted the language presented by Defense Counsel in their written pleading" (Pl.'s Br. in Supp. of Mot. for Recusal at p. 23), means nothing. I routinely quote the language of parties when summarizing their allegations.

Plaintiff also takes issue with my ruling of October 6, 2009 in which I faulted her counsel for failing to timely produce in discovery the Plaintiff's self-styled "chronology" of events relevant to her claims. As to this particular discovery dispute I specifically declined to grant the Defendants' request for a dismissal of the action, finding that to be too draconian. Instead, I allowed the Defendants a brief (10 day) period in which to re-depose the Plaintiff concerning issues limited to the chronology, and I required Plaintiff's counsel to pay the reasonable attorney fees associated therewith. Although Plaintiff clearly takes issue with this ruling imposing very limited sanctions upon her counsel, she fails to mention that the other aspects of the Defendants' motion for dismissal

and/or sanctions were denied by me and thereby decided favorably to her.[4]  Overall, the record of that proceeding fails to evidence any deep-seated antagonism toward her or her attorney as could support a motion for recusal.

Plaintiff further complains about my March 16, 2010 in-court ruling[5] in which, as she sees it, the Court was addressing competing motions for sanctions by both sides but treated the parties disparately.  Rather than rehash the particulars of the parties' respective motions, the Court will simply allow the record to speak for itself.  Suffice to say that, despite Plaintiff's objections to the Court's ruling of March 16, 2010 – which remains the subject of a pending motion for reconsideration, the record will not support a finding of deep-seated favoritism toward Defendants or antagonism toward the Plaintiff as would cause a reasonable and informed person to question this Court's impartiality.

Plaintiff perceives that I again treated her less favorably vis-à-vis the Defendants during arguments held on January 6, 2011 and May 27, 2011.  She complains that I somehow "invited the Defendants to renew their arguments originally presented in their Joint Supplement" some nine months after Defendants had been allowed to conduct the limited discovery permitted by the Court in its March 16, 2010 order.  (Pl.'s Br. [221] at p. 26.)  To set the record straight, the Court did not "invite" Defendants to renew their joint supplement allegations at the January 6, 2011 argument.  Rather, the record will reflect that the Court was merely inquiring whether Defendants were still standing by the

---

[4] Plaintiff also fails to mention that this Court later imposed costs on the Defendants relative to the appointment of a third-party expert in connection with Plaintiff's concerns over the integrity of Defendant Maynard's hard drive.

[5] It should be noted that Ms. Scibetta was not involved in either the October 6, 2009 or March 16, 2010 rulings.

13

allegations raised in their Joint Supplement, and this was done in an attempt to ascertain what issues still remained in dispute.  Since the January 6 argument concerned the Plaintiff's motions for Rule 11 sanctions *based upon the allegations Defendants had raised in their Joint Supplement, and since the Court had never passed upon the merits of the Defendants allegations of spoliation and alteration of evidence as contained in their Joint Supplement,* it was both logical and necessary for this Court to ascertain whether it was receiving evidence for the sole purpose of assessing the Plaintiff's Rule 11 motion or whether, in addition, the Defendants were still seeking a ruling based upon the discovery violations alleged in their Joint Supplement.

      Plaintiff perceives, however, that this Court engaged in "apparently disparate treatment" when, on May 27, 2011, after this case had been pending a full four years and with discovery disputes still on-going, it attempted to bring some finality to the pretrial discovery phase.  Although Plaintiff acknowledges that this Court granted her motion to reopen discovery, she apparently takes offense to this Court's observation that "any case can go down a million rabbit holes, but sometimes you['ve] got to stop, we are about to stop … There's not going to be any extensions of discovery, that 60 days is a firm date."  Notwithstanding the Courts' fairly generous grant of 60 days' additional discovery – and the fact that it has since extended Plaintiff's opportunity to engage in discovery even beyond this 60-day deadline, Plaintiff views the Court's actions as evincing "a predisposition to not look favorably upon any motions from Plaintiff seeking remedies for any spoliation evidence that she was able to confirm during discovery or any extensions of discovery that might have proven necessary given the nature of the issues being investigated."  (Pl.'s Br. [221] at p. 26.)  Again, it is

14

sufficient simply to rest on the record here, which will not support any reasonable perception of a deep-seated antagonism on the part of this Court. Plaintiff was given ample leave to explore the issues she raised relative to the May 27, 2001 hearing, and any reasonable observer would understand that the Court's comments were borne not of judicial bias but merely of its desire to bring some finality to these extensive pretrial proceedings.

Finally, Plaintiff contends that a reasonable person would infer bias on the part of this Court based on its "fail[ure] to issue timely orders on several outstanding issues in the instant case." (Pl.'s Br. [221] at p. 26.) However, to the extent this litigation has become unduly protracted, the record will quickly dispel any notion that the delays have resulted from judicial inattention, apathy, or lack of impartiality. Instead, what the record would demonstrate to the well-informed and reasonable observer is that this otherwise unremarkable employment discrimination case has occasioned an unusually high number of pretrial filings and court hearings, most of which have been directed toward discovery-related, rather than merits-related, disputes. The record will further reflect that the parties' pretrial practice has, from the start, been unusually aggressive and contentious. In the process, both sides have sought, and received, leave to argue and re-argue their respective points, with the result that a substantial amount of this Court's limited judicial resources have been consumed on the most detailed and mundane of allegations.

The pending motion for recusal illustrates this point well. Upon the filing of this motion, it became incumbent for this Court to forestall work on other matters in order to consider the propriety of its continued management of this case. After receiving lengthy

responses to the instant motion from all other interested parties, including the production of new information by the School District, the Plaintiff filed a seven-page motion for an extension of time in which to file her reply brief, based on numerous complaints about the manner in which she had received the new information. After being granted this extension, Plaintiff filed a 47-page reply brief [229], accompanied by 250 pages of supporting materials on October 7, 2011. This was followed by a joint motion by the Defense [230] to file a 25-page sur-reply brief to Plaintiff's Reply Brief, in order to address the arguments raised by the Plaintiff based on the recently provided documents. This in turn was followed by the Plaintiff's 5-page response [231], requesting that the Defendants be denied the opportunity to file their sur-reply or, in the alternative, be limited to only a 15-page sur-reply to be followed by a 7-page sur-sur-reply by the Plaintiff. In addressing Plaintiff's various arguments for recusal, this Court has had to invest substantial time reviewing the lengthy and convoluted docket in this case merely to place the Plaintiff's allegations in proper factual context.

Plaintiff suggests, for example, that a neutral observer would infer bias from the fact that Plaintiff's motion for reconsideration of my March 16, 2010 order is still pending. However, a person knowledgeable of all the facts would understand that the pendency of this particular motion has in no way prevented the Plaintiff from pursuing (and obtaining) relevant discovery in support of her case, including the very electronic information which Plaintiff claims was withheld from her in violation of Fed. R. Civ. P. 45 and which was among the subjects discussed in this Court's March 16 order.

Plaintiff also cites her Rule 11 sanctions motion as an example of this Court's failure to act sufficiently expeditiously. However, a hypothetical reasonable and well-

informed observer would understand that the issues raised in Plaintiff's Rule 11 motion are not run-of-the-mill allegations of misconduct; instead, they revolve around highly technical information requiring the testimony of computer forensics experts. Such an observer would also understand that this Court fully indulged the Plaintiff's efforts to litigate her Rule 11 allegations by affording her a 3-day evidentiary hearing, in addition to the lengthy supporting and reply briefs that were accepted into the record. Due to the duration of the evidentiary hearing and the complexity of the subject matter, the Court requested and received from the parties extensive proposed findings of fact and conclusions of law. Substantial time has been invested by the Court toward resolving Plaintiff's Rule 11 motion, despite a busy court docket involving other time-consuming matters, including criminal cases which, due to speedy trial concerns, took precedence over this case.[6] This notwithstanding, the Court's work on the Rule 11 motion was essentially put on hold once the Plaintiff filed the instant motion for recusal challenging the propriety of this Court's further involvement in the case.

Plaintiff also suggests that this Court took too long (204 days) to rule upon her motion to reopen discovery relative to the potential spoliation of Defendant Maynard's hard drive[7]; this "lengthy delay," she complains, "resulted in more significant faded memories of the relevant witnesses," and she finds it "notable that this request for discovery related specifically to possible misconduct on the part of Knox." (Pl.'s Br. [221] at p. 27.) What Plaintiff fails to mention, however, and what a well-informed

---

[6] Not the least of these were *United States v. Marjorie-Diehl Armstrong*, Case No. 1:07-cr-26-SJM-1 and *United States v. Jeremy Noyes,* Case No. 1:08-cr-55-SJM-1.

[7] Although Plaintiff does not specify the motion she is referring to, we assume she means her Motion for Extension of Time Within Which to Complete Discovery Relevant to the Electronically Stored Information [182], which was granted via text order on March 31, 2011.

observer would understand, is that in the midst of this motion being briefed up, the Plaintiff filed her Rule 11 motion which – for all the reasons previously discussed – gave rise to a totally new, lengthy, and time-consuming collateral dispute.  Thus, when considered in proper context, the incidents cited by the Plaintiff do not give rise to any reasonable inference of judicial bias, much the type of "deep-seated favoritism or antagonism … that would make fair judgment impossible." *Liteky,* 510 U.S. at 555.

### III.     CONCLUSION

In sum, no grounds exist for my disqualification from this four and a-half year-old civil action based upon my law clerk's relation to a Knox lawyer, my former employment at that firm some seventeen years ago, and my various rulings (or failure to yet rule) on matters arising in this litigation.  To reiterate, the relevant standard requires that the recusal motion be evaluated from the viewpoint of a "well-informed, thoughtful and objective observer" rather than from the perspective of a "hypersensitive, cynical and suspicious person." *Sensley,* 385 F.3d at 599.  Applying that standard, Plaintiff has failed to state any basis that would require my recusal pursuant to 28 U.S.C. § 455.  Where issues of recusal arise, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (Per Mr. Justice Rehnquist, on motion to recuse).  *See also Clemens*, 428 F.3d at 1179; *Sensley*, 385 F.3d at 598-99; *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995).  Accordingly, the Plaintiff's motion to recuse will be denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYANN ANDERSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07-cv-111-SJM |
| v. ) | |
| ) | |
| BOARD OF SCHOOL DIRECTORS ) | |
| OF THE MILLCREEK TOWNSHIP ) | |
| SCHOOL DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

## O R D E R

AND, now, to wit, this 3rd Day of November, 2011, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion [220] for Recusal shall be, and hereby is, DENIED.

          s/    <u>Sean J. McLaughlin</u>

               Sean J. McLaughlin
               United States District Judge

cc:    All counsel of record.